# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00442-CR

**Jimmy Dean Martin, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
## NO. 63666, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jimmy Dean Martin was convicted of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02 (West 2003). With an enhancement for prior convictions, punishment was assessed at 70 years' imprisonment. *See id*. § 12.42(c)(1) (West Supp. 2010). Martin appeals, arguing that the trial court erred by (1) denying his challenge for cause to a venireperson and (2) qualifying an expert witness despite the witness's repeated statements that he was not an expert. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The jury heard evidence that Martin broke into a house and stole several items. Investigators recovered a latent palm print from the house that matched Martin's. They also interviewed several neighbors who stated that Martin had tried to sell them some of the items he stole. Another neighbor stated that he had seen some of the stolen items in Martin's possession after the burglary.

Martin was indicted for burglary of a habitation. *See id*. § 30.02. His indictment alleged four prior felony convictions for enhancement purposes. *See id*. § 12.42(c)(1). Martin pleaded not guilty and proceeded to trial. During voir dire, Martin questioned the venirepersons about whether they could consider the full range of punishment for a hypothetical defendant if they found him guilty of burglary and it turned out he had prior convictions. Venireperson 4 responded that she could not, and Martin challenged her for cause. The State opposed the challenge, arguing that Martin's questions had been worded confusingly and that consequently it was not clear whether venireperson 4 really could not consider the full range of punishment. The court ultimately denied Martin's challenge for cause, and Martin then used a peremptory challenge to strike venireperson 4.

After the jury was selected, the State called as its first witness Willroy Petrucha, the investigator who had discovered Martin's latent palm print at the crime scene. Martin asked to examine Petrucha outside the jury's presence, and the court granted his request. Martin asked Petrucha whether he was a fingerprint expert, and Petrucha said that he was not. On the basis of this statement, Martin objected to Petrucha testifying as an expert. The State then questioned Petrucha about his training and experience. Martin reiterated his objection, but the court ultimately qualified Petrucha as an expert. After the jury was recalled, Martin again asked Petrucha whether he was a fingerprint expert, and Petrucha again said that he was not. Martin re-urged his objection, and the court again overruled it. Petrucha proceeded to testify that the latent print he discovered at the crime scene came from Martin. Later, the State called a second fingerprint witness, Wayne Corley, whose expertise Martin did not challenge. Corley also testified that the latent print came from Martin.

At the conclusion of the trial, the jury found Martin guilty and imposed a sentence of 70 years' confinement. Martin appeals.

**STANDARD OF REVIEW**

We review a trial court's ruling on a challenge for cause with considerable deference because the trial court is in the best position to evaluate a venireperson's demeanor and responses. *Blue v. State*, 125 S.W.3d 491, 497 (Tex. Crim. App. 2003). We will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident. *Id*. An abuse of discretion is evident only when no reasonable view of the record could support the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). When a venireperson is uncertain, unclear, vacillating, or contradictory, or when a venireperson equivocates on the question of his or her ability to follow the law as it pertains to the juror's legal role in a criminal proceeding, we defer to the trial court's findings. *See Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002); *Adanandus v. State*, 866 S.W.2d 210, 222 (Tex. Crim. App. 1993).

We review a trial court's decision to admit or exclude expert testimony for abuse of discretion. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). This means that we will uphold the trial court's decision if it is within the zone of reasonable disagreement. *Id*. "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers v. State*, 205 S.W.3d 525, 527-28 (Tex. Crim. App. 2006). Thus, we will "rarely disturb the trial court's determination that a specific witness is or is not

3

qualified to testify as an expert." *Id*. at 528 n.9 (citing *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000)).

## DISCUSSION

Martin raises two issues on appeal. First, he argues that the trial court erred by denying his challenge for cause to venireperson 4 because venireperson 4 suggested she could not consider the full range of punishment for a hypothetical defendant with prior convictions.[1] Second, he argues that the trial court erred by qualifying Petrucha as a fingerprint expert despite Petrucha's statements that he was not an expert. We will consider these arguments in turn.

### *Whether the Trial Court Erred by Denying Martin's Challenge for Cause to Venireperson 4*

Martin argues that venireperson 4 indicated she would be unable to consider the full range of punishment if it turned out Martin had prior convictions. Martin is correct that an inability to consider the full range of punishment is a form of bias that is grounds to excuse a prospective juror for cause. *See* Tex. Crim. Proc. Code Ann. art. 35.16(c)(2) (West 2006); *Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). "Before a prospective juror can be excused for cause on this basis, however, the law must be explained to him," "he must be asked whether he can follow that law regardless of his personal views," and his answer must indicate that his bias "would substantially impair [his] ability to carry out his oath and instructions in accordance with law." *Feldman*, 71 S.W.3d at 744.

---

[1] Martin actually challenged several venirepersons on this basis, but he discusses only venireperson 4 on appeal.

Martin's counsel began the relevant portion of voir dire by asking venireperson 9[2] a "hypothetical question":

> [A]ssume that you found someone guilty of burglary of a habitation . . . . Assume you have no reasonable doubt as to the person's guilt, all right. Assume it was done knowingly and intentionally. And you get to the punishment part [of trial]. And the range of punishment is 5 to 99 years in the penitentiary . . . . Can you, given the hypothetical, can you in good faith fairly consider the minimum of punishment five years?

Venireperson 9 responded that she could consider the minimum in such a scenario. Apparently no venireperson expressed a different opinion, because defense counsel stated, "So everybody could [consider the full range]." Defense counsel then posed a second question: "same hypothetical. The person in my make believe story has been previously convicted of a felony. Can you in good faith fairly consider the minimum punishment of five years?" After soliciting answers from several venirepersons, defense counsel repeated the question with the hypothetical defendant having increasing numbers of prior convictions, ultimately asking: "Same hypothetical with a person that's got four prior felony convictions, can you in good faith fairly consider the minimum punishment of five years?"[3] Venireperson 4 replied "no," as did several other venirepersons.

Martin then challenged the venirepersons who said "no," including venireperson 4, arguing that they had indicated "they could not consider the minimum punishment." The State

---

[2] Venireperson 9 was not one of the venirepersons Martin ultimately challenged for cause.

[3] Given Martin's four prior felony convictions, the minimum sentence the jury could impose here was actually fifteen years, not five. *See* Tex. Penal Code Ann. § 12.42(c)(1) (West Supp. 2010). This fact underscores the disconnect between Martin's hypothetical and the law the jury would actually be applying.

5

opposed Martin's challenge, arguing that Martin's hypothetical questions were "very convoluted" and that consequently the significance of the venirepersons' responses was not clear. The State further argued that hypothetical questions are an "inappropriate" basis for a challenge for cause because in answering them a venireperson does not "commit to anything." The State argued that without probing the venirepersons with follow-up questions to firmly establish their bias, Martin failed to establish that they were properly excludable for cause. The court ultimately denied Martin's challenges for cause, explaining that Martin's hypothetical questions were unclear, that many venirepersons appeared confused by them, that several venirepersons may have been responding to each other's answers rather than Martin's questions, and that Martin failed to firmly establish bias by asking probing follow-up questions.

On this record, we cannot say that the trial court abused its discretion. In the absence of a "clearly objectionable declaration by [a] venireperson," we defer to the trial judge's decision to deny a challenge for cause. *Swearingen v. State*, 101 S.W.3d 89, 98 (Tex. Crim. App. 2003). A clearly objectionable declaration is one that indicates the venireperson has a bias that "would substantially impair [his] ability to carry out his oath and instructions in accordance with law." *Feldman*, 71 S.W.3d at 744. Because venireperson 4's purportedly objectionable declaration was made in response to a hypothetical question, the trial court could reasonably conclude that the declaration did not clearly evince a bias against the law that venireperson 4 would actually be asked to apply. In fact, Martin's hypothetical assumed a minimum sentence of five years, but given Martin's four prior felony convictions, the minimum sentence the jury could impose here was actually fifteen years. *See* Tex. Penal Code § 12.42(c)(1). This discrepancy reinforces that the

venirepersons' answers to Martin's hypothetical did not necessarily reflect their feelings towards the law they would actually be asked to apply.

Furthermore, before a venireperson's clearly objectionable declaration will support a challenge for cause, the venireperson "must be asked whether he can follow th[e] law regardless of his personal views." *Id*. Venireperson 4 was not asked this vital follow-up question; rather, she was challenged after responding only to a hypothetical scenario.

Finally, the trial court perceived confusion among the venirepersons and thought that some of them might be responding to each other rather than to Martin's questions. To the extent this suggests the venirepersons' answers were "unclear," that fact further counsels deference to the trial court's determination. *See id*.; *Adanandus*, 866 S.W.2d at 222. For all these reasons, we cannot say that the trial court clearly abused its discretion in denying Martin's challenge for cause to venireperson 4. We overrule Martin's first issue.

### *Whether the Trial Court Erred by Qualifying Petrucha as an Expert*

Martin next argues that the trial court erred by qualifying Petrucha as a fingerprint expert because Petrucha denied he was a fingerprint expert.

Texas Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." A witness's qualification to serve as an expert is a question of law for the court to decide. *See Rodgers*, 205 S.W.3d at 527-28. We look

7

to the following three factors in assessing whether the trial court abused its discretion in ruling on an expert's qualifications:

> First, is the field of expertise complex? The degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify . . . . Second, how conclusive is the expert's opinion? The more conclusive the expert's opinion, the more important is his degree of expertise . . . . And third, how central is the area of expertise to the resolution of the lawsuit? The more dispositive it is of the disputed issues, the more important the expert's qualifications are.

*Id.* at 528.

Here, these factors establish that the trial court did not abuse its discretion by qualifying Petrucha as a fingerprint expert. Regarding the first factor, latent fingerprint analysis is not complex, *see id.*, and the "degree of education, training, or experience that a witness should have before he can qualify as an expert" on it is "directly related" to its level of complexity. *See id.* Petrucha testified that he had been certified in fingerprint comparison by the Texas Department of Public Safety after graduating with perfect scores from three fingerprinting courses in which he examined thousands of prints. He also testified that he had been mentored by three highly experienced fingerprint experts, had been trained in all the equipment used for latent print collection and comparison, and had reviewed many studies, articles, and journals concerning fingerprints. Martin cites no authority, nor are we aware of any, suggesting that such a background was insufficient to qualify Petrucha as a fingerprint expert. Indeed, the existence of such authority would be surprising given the "great discretion" entrusted to trial courts in evaluating experts' credentials. *Id.*

Regarding the second factor, Petrucha's opinion was rather conclusive, as he testified that the odds of a false-positive print match are very low. *See id*. The weight of this conclusiveness is more than offset by the third factor, however, as Petrucha's testimony was not central to the resolution of the lawsuit. In fact, it was effectively superfluous, as the State called a second fingerprint expert who gave uncontested testimony that was identical to Petrucha's. Furthermore, expert testimony was not the only evidence in the case— the State called witnesses who testified to seeing stolen goods in Martin's possession—which further reduces the centrality of Petrucha's testimony. *Cf id*. ("If [the subject of expert testimony] is the only thing tying the defendant to the crime, the reliability of the expertise and the witness's qualifications to give his opinion are more crucial than if eyewitnesses and a confession also connect the defendant to the crime."). On balance, given the weight of these factors, we cannot say that the court abused its discretion by qualifying Petrucha as an expert witness. *See id*. at 527-28. We overrule Martin's second issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: December 15, 2010

Do Not Publish

9