COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 

 


 
 
  
 BILLY CHEEKS,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-10-00353-CR
  
                          Appeal from
  
 168th District
 Court
  
 of El Paso County,
 Texas
  
 (TC # 20100D02976)
 
 
 
 
  
  
 
 
  
  
 
 
  
 
 


 

                                                                  O
P I N I O N

 

            Billy Cheeks appeals his conviction
of family violence assault enhanced by a prior conviction of family violence
assault.  The indictment charged
Appellant with aggravated assault in Count I and family violence assault
(enhanced) in Count II.  A jury acquitted
Appellant of aggravated assault but found him guilty of Count II.  At the conclusion of the punishment phase of
trial, the trial court found Appellant had previously been convicted of
attempted murder as alleged in the enhancement paragraph and assessed his punishment
at imprisonment for a term of twelve years. 
We affirm.

FACTUAL SUMMARY

            Petra Chriktane Triplett was living
with Appellant on June 1, 2009.  That
morning, Appellant went to the store to buy beer, wine, and cigarettes.  Appellant returned home and discovered that
the clerk had not put the cigarettes in the bag.  Appellant became furious and blamed Triplett
even though she had not gone to the store with him.  Appellant told her to shut up and go stay in
the bedroom until he told her she could come out.  Triplett left the apartment and went to a
friend’s house where she stayed until the evening.  Appellant sent Triplett several text messages
while she was gone and accused her of having an affair.  Triplett returned to the apartment at 9 p.m.
and Appellant began yelling at her.  He
also shoved her around the apartment. 
Triplett turned to leave the apartment when Appellant grabbed her and
threw her into the hallway.  He forced
her into the bedroom and suddenly kicked her in the ribs which caused her to fly
into the wall and fall to the floor. 
Triplett described it as a “karate kick jump.”  Triplett could not breathe and felt
tremendous pain in the rib area.  While
Triplett was on the floor clutching her ribs, Appellant began punching her in
the back, neck, and head.  He also put
both hands around her neck and choked her until she could not breathe until he
suddenly stopped and returned to the living room to watch television.  After a few minutes, Triplett went into the
living room and told Appellant she needed to go to the hospital but Appellant
initially refused because he thought they would think he had beat her up.  Appellant eventually relented and took
Triplett to the VA hospital but he dropped her off about one hundred yards from
the entrance.  The medical records and
photographs taken at the hospital reflect that Triplett had a broken rib and
multiple bruises, including bruises on her neck.

            Appellant testified that he is a
Vietnam veteran and he has been 100 percent disabled since 1981.  He has had two spinal laminectomy surgeries
and his knees are held together by screws. 
Additionally, his left thumb has been “totally reconstructed.”  He was convicted of aggravated assault with a
deadly weapon and attempted murder in 2000. 
Appellant recalled that when he left the apartment on June 1, 2009,
Triplett was going to do the dishes and start looking for a job because she had
recently been fired.  She needed to work
because he had recently moved into a more expensive apartment to accommodate
her.  When he returned to the apartment
from a doctor’s appointment at about 12:15 p.m., he noticed that the dishes had
not been done and Triplett was not home. 
She had not opened the newspaper to the classified section, so he called
her and asked where she was.  Based on
what she told him, Appellant decided Triplett needed to move out and he would
move back to the smaller apartment because she did not want to work.  Appellant got some boxes out of the storage
shed and told Triplett in a text that she needed to pack up her belongings and
leave.  When Triplett returned, Appellant
saw that she was intoxicated.  He told
her that she could not even sit down and she needed to just pack up and leave.  Appellant denied hitting or punching
Triplett.  He denied kicking her and said
that if he jumped it would “crack the bones” in his leg and back.  Despite these denials, he admittedly took
Triplett to the hospital when she asked. 
He dropped her off outside of the gate to Fort Bliss because he did not
have auto insurance and could not drive on base without it.  

            The jury found Appellant not guilty
of aggravated assault (Count I) but found him guilty of family violence assault
(Count II).  Appellant elected that his
punishment would be determined by the trial court.  Appellant entered a plea of true to the
enhancement paragraph and the trial court found Appellant had previously been
convicted of attempted murder.  The court
assessed Appellant’s punishment at imprisonment for a term of twelve
years.  

PROSECUTORIAL MISCONDUCT

            Appellant raises three issues
related to alleged prosecutorial misconduct that occurred when the prosecutor
asked Appellant whether he had been convicted of attempted murder for shooting
his ex-wife.  Appellant had previously
been convicted of attempted murder and aggravated assault with a deadly weapon
(firearm).  Prior to trial, the trial
court granted Appellant’s motion in
limine and required the State to approach the bench before attempting to go
into the facts underlying Appellant’s prior convictions.  Appellant testified during the guilt-innocence
phase and admitted he had been convicted on October 25, 2000 of aggravated
assault with a deadly weapon and attempted murder.  During cross-examination by the State,
Appellant testified that he did not have problems with his temper.  The prosecutor then asked him:  “And you pled guilty to attempted murder for
having shot your ex-wife?”  The trial
court sustained Appellant’s objection that the State could not question him
about the underlying facts of the prior conviction and the court instructed the
jury to disregard the prosecutor’s question. 
The court denied Appellant’s request for a mistrial.  Later during cross-examination, the
prosecutor asked Appellant whether, despite having all of his injuries, he had the
physical capability to commit the offenses of aggravated assault and attempted
murder, and Appellant admitted that he did.

Denial of Motion for Mistrial

            We will begin with Issue Three which
is related to the trial court’s denial of Appellant’s motion for mistrial.  We review a trial court’s ruling on a motion
for mistrial for an abuse of discretion.  Hawkins
v. State, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004); Wead v. State, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004).  A mistrial is the trial court’s remedy for
improper conduct that is so prejudicial and incurable that expenditure of
further time and expense would be wasteful and futile.  Hawkins,
135 S.W.3d at 77; Ladd v. State, 3
S.W.3d 547, 567 (Tex.Crim.App. 1999). 
The determination of whether a given error necessitates a mistrial must
be made by examining the particular facts of the case.  Ladd,
3 S.W.3d at 567.  To determine whether a
trial court abused its discretion in denying a defendant’s motion for a mistrial,
we consider three factors:  (1) the
severity of the misconduct; (2) the measures adopted to cure the misconduct
(the efficacy of any cautionary instruction by the trial court); and (3) the
certainty of conviction absent the misconduct (the strength of the evidence
supporting the conviction).  Hawkins, 135 S.W.3d at 77.

Looking
first at the severity of the misconduct, it is undisputed that the prosecutor
confused the facts of the two prior convictions when he asked Appellant whether
he had pled guilty to attempted murder for shooting his ex-wife.  The aggravated assault conviction involved a
firearm but the attempted murder conviction did not.  The judgment of conviction reflects that the
court made an affirmative finding that Appellant’s hands were deadly
weapons.  Consequently, the prosecutor’s
question was based on inaccurate facts. 
We do not necessarily agree that the prosecutor’s attempt to go into the
underlying facts of the conviction was improper because the details of the
prior attempted murder conviction might have been admissible to rebut
Appellant’s defense that he was physically unable to assault Triplett.  The trial court overruled Appellant’s
objections and permitted the State to cross-examine Appellant generally on this
matter but the prosecutor did not attempt to go into the facts of the prior
convictions.  Because that theory of
admissibility was not fully developed at trial, we will assume for the sake of
argument that the prosecutor’s attempt to go into the details of the prior
conviction was improper impeachment.  The
prosecutor could, however, properly ask Appellant whether he had been convicted
of attempted murder on October 25, 2000 in the 41st District Court.  The prosecutor asked the improper portion of
the question only once.  We conclude that
the prejudicial effect of the question was slight.

The
trial court promptly instructed the jury to disregard the prosecutor’s
question.  In the absence of anything in
the record leading us to conclude that the jury did not or could not obey the
trial court’s instruction, we will presume that jury followed the trial court’s
instruction.  See Gamboa v. State, 296 S.W.3d 574, 580 (Tex.Crim.App. 2009)(a
reviewing court generally considers instructions given to the jury to be
sufficient to remedy most improprieties that occur during a trial and presumes
that a jury will follow the trial court’s instructions).

            Finally, with regard to the strength
of the evidence supporting Appellant’s conviction, the jury had to decide the
case based on the competing testimony of Triplett and Appellant.  Triplett’s description of the assault is
corroborated by medical evidence and photographs.  While Appellant claimed he did not have a
temper and did not have the physical ability to assault Triplett, the State
properly impeached Appellant with evidence he had previously been convicted of
two violent crimes, attempted murder and aggravated assault.  

A
mistrial is reserved for those rare circumstances when the objectionable action
was so emotionally inflammatory that curative instructions are not likely to
prevent the jury from being unfairly prejudiced against the defendant.  Young v.
State, 137 S.W.3d 65, 71 (Tex.Crim.App. 2004).  We conclude that the improper portion of the
prosecutor’s question was not so inflammatory that the trial court’s
instruction to disregard would have been ineffective in preventing unfair
prejudice.  Having found no abuse of
discretion, we overrule Issue Three.

Denial of Motion for New Trial

            In Issues One and Two, Appellant
contends that the trial court erred by denying his motion for new trial based
on prosecutorial misconduct and violation of the order in limine.  These issues
relate to the same facts as in Issue Three. 


            Appellant filed a motion for new
trial raising the issue of prosecutorial misconduct based on the prosecutor
attempting to elicit details about the attempted murder conviction during
cross-examination.  At the hearing, the
prosecutor admitted he should have approached the bench before asking Appellant
any details about the attempted murder conviction.  The trial court denied the motion for new
trial.  

We
review the trial court’s denial of a motion for new trial for an abuse of
discretion.  Webb v. State, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007).  We view the evidence in the light most
favorable to the trial court’s ruling and uphold the ruling if it falls within
the zone of reasonable disagreement.  Webb, 232 S.W.3d at 112.  Further, we do not substitute our judgment for
that of the trial court, but rather we decide whether the trial court’s
decision was arbitrary or unreasonable.  Id.

We
examine claims of prosecutorial misconduct on a case-by-case basis.  Stahl v.
State, 749 S.W.2d 826, 830 (Tex.Crim.App. 1988); Perkins v. State, 902 S.W.2d 88, 96 (Tex.App.--El Paso 1995,
no pet.).  Prosecutorial misconduct has
been found where:  (1) the prosecutor’s
actions deliberately violated an express court order; (2) where the prosecutor’s
misconduct was so blatant as to border on being contumacious; and (3) where the
prosecutor asked a question which was clearly calculated to inflame the minds
of the jury and was of such a character so as to suggest the impossibility of
withdrawing the impression produced.  See Stahl, 749 S.W.2d at 831; Perkins, 902 S.W.2d at 96.

            Appellant’s claim is based on a
single violation of the order in limine.  There is no evidence in the record that the
prosecutor deliberately violated the order to elicit inadmissible evidence or
that his conduct was so blatant that it bordered on being contumacious.  Finally, as we have already discussed, the
prosecutor’s question is not so inflammatory that the trial court’s prompt
instruction could not have cured any prejudice caused by it.  Accordingly, the trial court did not abuse
its discretion by denying the motion for new trial.  We overrule Issues One and Two.  Having overruled all issues for review, we
affirm the judgment of the trial court.

 

January 16, 2012                                             __________________________________________

ANN CRAWFORD McCLURE, Chief
Justice

 

Before McClure, C.J., Rivera, J., and Chew, C.J. (Senior)

Chew, C.J. (Senior), sitting by assignment

 

(Do Not Publish)