**MODIFY, REFORM, and AFFIRM; and Opinion Filed June 25, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-01040-CR**

**SHANE DONOVAN KEYS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F11-45726-J**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Lang-Miers

Appellant Shane Donovan Keys was charged with aggravated robbery with a deadly weapon. He pleaded guilty and a jury assessed punishment at 25 years in prison and a $7,500 fine. Appellant raises two issues on appeal arguing that the trial court abused its discretion when it overruled appellant's motion for mistrial and that the judgment should be modified to accurately reflect that appellant pleaded guilty. We modify the trial court's judgment to reflect appellant's guilty plea and affirm as modified. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in this case is well settled.

## BACKGROUND

During the punishment phase of appellant's trial the State introduced into evidence without objection judicial confessions and stipulations of evidence from a total of four aggravated robberies, including the aggravated robbery in this case. The State also introduced into evidence without objection appellant's judicial confessions relating to two prior convictions for possession of marijuana. With respect to the armed robberies, appellant's codefendant Lacorey Birdow testified that he and appellant robbed between 10 and 15 women of their purses over about a two month period. Each time, Birdow drove appellant around until they found a woman getting out of her car alone. Most of the time, after they found a target, appellant would leave the car by himself and return with the woman's purse. The robberies were "an adrenaline rush" to appellant and he was "very happy" when he returned to the car with the purses. Birdow testified that he and appellant committed the robberies because it was "fast and easy." They used the money from the robberies for "[g]as and liquor and weed." Birdow was caught by the police after pawning some items belonging to one of the robbery victims. He confessed to the robberies and identified appellant as his accomplice.

In this case appellant pleaded guilty to the aggravated robbery of Glynette Dilworth. Dilworth testified that she returned home from work late one evening and was approaching her front door when a man approached her carrying a baseball bat and wearing a bandana over his face. The man repeatedly demanded her purse and she decided to hand it over to him. The robbery left Dilworth constantly afraid for her safety, especially at night. In addition to Dilworth, the women whose purses were stolen in the other armed robberies to which appellant confessed also testified for the State, including one who testified that she was struck five or six times with a baseball bat when she did not let go of her purse, and one who testified that a knife was put to her throat during the robbery.

Appellant's counsel called three witnesses to testify during the punishment phase: appellant's best friend, appellant's mother, and appellant. Appellant's best friend and his mother generally testified that appellant deserved probation because he came from a good family, did not have a violent or criminal past other than marijuana use, and was a good person and student whose demeanor changed after his cousin was murdered and other members of his family died.

Appellant testified that he was a good student and was halfway through earning a degree in electrical engineering when he was kicked out of school for marijuana possession. Appellant took responsibility for the robberies and the only testimony he disputed was the testimony about him using a knife in one of the robberies. Appellant testified that it was a screwdriver that "may have been misconcepted [sic] as a knife." At the time of the robberies he felt "lost" and was not himself. He asked the jury for a second chance.

After the close of the evidence the jury was instructed on (1) the range of punishment of 5 to 99 years with a fine not to exceed $10,000, and (2) the availability of community supervision. The jury returned a verdict sentencing appellant to 25 years in prison and a $7,500 fine.

### APPELLANT'S MOTION FOR MISTRIAL

In his first issue appellant argues that the trial court abused its discretion by overruling appellant's motion for mistrial.

Appellant's complaint on appeal arises from the following exchange during the State's questioning of Birdow:

Q.   And you currently have five cases of aggravated robbery pending against you; is that correct?

A.   Yes, sir.

Q.   And you also have one in Collin County; is that right?

–3–

A.	Yes, sir.

Q.	Same cases, same victims as [appellant]; is that correct?

A.	Yes, sir.

Q.	And you've already pled guilty to those; is that correct?

A.	Yes, sir.

Q.	And you are going to go open to the judge for punishment; is that correct?

A.	Yes, sir.

Q.	So you've accepted responsibility for your involvement?

A.	Yes, sir.

Q.	And I'm also the prosecutor on those cases as well; is that correct?

A.	Yes, sir.

Q.	And you understood that your pretrial recommendation was 30 years.

A.	Yes, sir.

Q.	And we haven't had any—

[Appellant's Counsel]: Judge, objection.

THE COURT: Objection sustained.

[Appellant's Counsel]: May we approach the side of the bench, please?

THE COURT: Yes.

(At the bench, off the record.)

(Open court, defendant and jury present.)

[Appellant's Counsel]: Your Honor, at this time I'm going to move for a mistrial.

THE COURT: Your request is denied.

[Appellant's Counsel]: Ask the jury to disregard, please.

> THE COURT: The jury is instructed to disregard the last answer that was given.

At the conclusion of Birdow's testimony, appellant's counsel re-urged his motion for mistrial and argued as follows:

> Your Honor, I believe when a codefendant gets up here, that is involved in directly each of these robberies, and the State of Texas talks about plea bargain negotiations and what the offer is, that that—that that number that was put there at 30 years is—is so damaging because it gives them a benchmark that is outside what—this trial, that I don't believe that the instruction that you justly gave is enough to be able to cure what has been planted inside of their brains; that the fella here, who is—is obviously a lesser participant but a codefendant, gets offered 30. I believe that is—that is too much damage. I believe it's—I believe it's outside the bounds, and I believe not even an instruction to the jury is going to be able to cure that.

In response, the trial court denied the motion and explained its reasoning as follows:

> The Court is ready to rule. The Court is going to deny your request for a mistrial. I will say that, certainly, the number causes a concern for the Court; but since it was made clear to the jury that this was a plea bargain offer and that the defendant has not taken that plea bargain offer and, in fact, he is going open to the Court, meaning that I will assess punishment[.] [A]dditionally, the fact that it has been made clear to the jury that the defendant is asking for probation and the State has offered some other number, I don't see [ ] his desire for probation being anymore offensive than the State's desire for 30.
>
> Certainly, I think it could have been handled differently, but I do not believe that it is grounds for a mistrial.

We review a trial court's denial of a mistrial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). To determine whether a trial court abused its discretion we consider three factors: (1) the severity of the misconduct, (2) curative measures, and (3) the likelihood the jury would assess the same punishment absent the misconduct. *See Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). Asking an improper question seldom requires a mistrial because any harm can usually be cured by an instruction to disregard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A mistrial is required "[o]nly in

–5–

extreme circumstances, where the prejudice is incurable[.]" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

In this case we cannot conclude that the trial court abused its discretion when it denied a mistrial. First, the conduct was not severe. Appellant and the State agree that the State's question about the State's offer to Birdow of 30 years in prison as part of his plea bargain was improper. *Cf. De La Rosa v. State*, 627 S.W.2d 207, 216–17 (Tex. App.—San Antonio 1981, no pet.) ("The rule has been repeatedly laid down that it is inadmissible to prove that another, jointly or separately indicted for the same offense, has been convicted or acquitted. . . . There appears to be no reason why proof of punishment in the one case should be admissible at the punishment phase of the co-defendant's trial."). But the question was brief and the State did not emphasize it or refer to it again. Second, the trial court took immediate curative measures; it sustained appellant's objection to the relevant question and instructed the jury to disregard Birdow's answer. Third, the record supports the punishment the jury assessed in the absence of the question. At trial four victims testified about being robbed of their purses. One was beaten with a baseball bat, the others were threatened. The victims also testified about the ongoing impact the aggravated robberies had on them. The jury was instructed to assess punishment between 5 and 99 years and elected a sentence at the lower end of that range: 25 years.

We resolve appellant's first issue against him.

## JUDGMENT MODIFICATION

In his second issue appellant asks this Court to modify the trial court's judgment to correct the plea entered in this case. The judgment indicates that appellant pleaded not guilty to the charge, but the record demonstrates that appellant pleaded guilty. The State agrees. This Court has the power to modify an incorrect judgment to make the record speak the truth when we

have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We modify the judgment to change the notation under "Plea to Offense" from "NOT GUILTY" to "GUILTY."

## CONCLUSION

We modify the trial court's judgment to reflect appellant's guilty plea and affirm as modified.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
Tex. R. App. P. 47

121040F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SHANE DONOVAN KEYS, Appellant

No. 05-12-01040-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F11-45726-J.
Opinion delivered by Justice Lang-Miers.
Justices Moseley and Bridges participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

the notation under "Plea to Offense" is changed from "NOT GUILTY" to "GUILTY."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of June, 2013.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE